of America, argument not to exceed 15 minutes per side, counsel, you may proceed for the appellant when ready. Good morning. Good morning, your honors. And may it please the court. Daniel Scott Hurao on behalf of the appellant. It's my pleasure to introduce Jared Hirsch, a recent graduate of NYU School of Law, who will be arguing the case under my supervision. All right. Thank you very much. All right. Mr. Hirsch. Good morning, your honors. Argument number 75 for you. Jared Hirsch appearing on behalf of Mr. Terrance Kimbrough. We've reserved five minutes for rebuttal, if it will please the court. Your honors, we are here today discussing a prison sentence that was undeniably and indisputably partially fashioned on no crime at all. That was the holding last year in Justice Gorsuch's decision in Taylor, where the justice made it clear that attempted Hobbs Act robbery is not a crime of violence that can sustain a 924C conviction. Thus, count nine in this case, a 924J conviction predicated on attempted Hobbs Act robbery is unlawful. And something to note is that with the combination of both Davis and Taylor, that conviction was unlawful at the time that it was entered. Mr. Kimbrough's trial counsel were ineffective for allowing him to plead guilty to that unlawful charge. First, counsel was deficient. 924C has two clauses. One of them, the residual clause, is unconstitutionally vague. We know that from the decision in Davis, but many courts and strong predictive dissents out of the Supreme Court told us that much, much earlier. So, can I ask just, you make very good legal arguments about the meaning of this conviction and this conviction being invalid. But at the time, counsel also had a practical consideration to confront, and the practical consideration was given your client's record, there was a very good chance that your client was going to get a life sentence. And it seems to me that a trade-off between getting the mandatory life sentence count dismissed for pleading guilty to this discretionary life sentence, but actually negotiating a cap at 520 struck me as quite effective, right? Because if this would have played out and went to trial, your client would have faced potentially a mandatory life sentence. So can't we take that practical consideration into account? Yes, there was this opportunity to argue this legal point with respect to this conviction that we're, or this offense we're here about now, but he did get a pretty significant benefit from the pleading guilty to that, which is he didn't get convicted of an offense that had a mandatory life sentence. Your Honor, I think that that requires us to consider the question of whether counsel can knowingly advise their client to plead guilty to an unlawful count of conviction. And the government does not cite a single case which states that counsel is allowed to encourage their client to do such. It also seems unclear that the court would have jurisdiction over such an unlawful charge. It wasn't clear at the time. So you had the tradeoff between, yes, we have legal arguments available to us with respect to this 924C charge or J charge. So we'll give up those legal arguments and plead guilty to it. And in return, we get dismissed a separate count that would have led to a mandatory life sentence. That strikes me as a pretty reasonable tradeoff. It wasn't like, oh, we know as a matter of law that this 924J conviction is invalid, but we're going to plead to it anyway. There was just a legal argument at the time. Another way to put that point is what jurisdiction in the country would have said it was illegal at the time the plea was approved? I think that there's a very real possibility that the jurisdiction in Mr. Kimbrough's, that the Middle District of Tennessee would have found that. If we look to the case of- No. What one at the time, what one had a precedent saying this is illegal? That was your point. You can't plead guilty to a crime that doesn't exist. That's a really good point. Where's the jurisdiction where it was already established at the time of the plea agreement that's not a crime? There was no jurisdiction that had affirmatively held. So why isn't that the end of the matter? Because as Justice Gorsuch made clear in Taylor, a clear-cut application of the categorical approach as discussed in Mathis in 2016 in a Post Johnson case, it resolves the question quite clearly that attempted Hobbs Act robbery is not categorically a crime of violence. In that decision, did he say that in plea agreements, a la our decision in Bradley, that there's no obligation to be clairvoyant, knowing exactly the way the law is going to go? You have to assess the reasonableness at the time of the plea agreement. The law can go in lots of directions. It can go in the direction actually of helping the government. I assume you wouldn't agree that if things were going the other way, we wouldn't undo things to benefit the government later on. Yes, Your Honor. I think our point is that the law did not change. Taylor is not some seismic change in the law. Rather, it's a clarification of the law as it was. All the cases that Justice Gorsuch is citing stands a single case. This is coming from prior to Mr. Kimbrough. All the lower court cases with all the lawyers were all constitutionally ineffective that went the other way until Justice Gorsuch's decision? No, we're just saying that arguing affirmatively that attempt crimes or attempts to Hobbs Act robbery in this case categorically qualifies as a crime of violence, knowing that the residual clause is unconstitutional, that that constitutes ineffective assistance of counsel. In the Chase case that you've all recently entertained in 2020, you found something similar where a number of similarly situated litigants were arguing against Michigan's statutory scheme against binding precedent that that scheme was constitutional after the Alene decision. Here, there was absolutely no binding precedent foreclosing the argument that... If there had been binding precedent, at least from the Supreme Court, foreclosing the argument, then we would say that you wouldn't procedurally default the claim, right? Now I'm not talking about the ineffective assistance claim, but we have this decision called in Gatewood that says, well, you procedurally default the claim if it was available to you, if you had the tools to make the argument. The tools were available to make the argument. I agree with that, but I'm wondering about the space between that on the Gatewood side, right? So you default the claim if you had the tools to make the argument and you didn't make the argument, but then should we be saying that you're not constitutionally ineffective if you don't use the tools that you have? We're saying... I think that defaulting the argument in and of itself points to prejudice here, that counsel failed to raise it below, and therefore now Mr. Kimbrough is obviously facing procedural bars that the government is raising in this case. So you don't want to grab it on the performance prong? We need to prove both prongs on the problem, right? Right. So I'm just wondering whether this can help you on the performance prong. Well, what we're saying is, yeah, I mean, this was foreseeable in the case of, you know, as Lucas held, as Thompson held, as Chase held. This was clearly foreseeable. Sessions v. DiMaia was decided in April of 2018. This case went to plea in August of 2018. It was quite clear that the residual clause was unconstitutional at that point. It is identically worded to the statute in DiMaia. And criminal defense attorneys across the country knew that if you have a 924C charge, where there's a possibility that your crime is not categorically a crime of violence, well, then you should make that argument. And I mean, this court has recently entertained the question of whether murder is categorically a crime of violence. I mean, this is not a ridiculous argument. Has your client committed to what would happen if you win? Has your client committed to, I'm going to trial? Yes. Our client agrees with the government here that the plea should be vacated if this court wishes to grant relief. And that our client will proceed from there with the government, and the government can then look to the merits of its case and the merits of the charges that it chose to dismiss. And accepts the risk that this victory could lead to a life sentence. Yes, Your Honor. Instead of getting out at age 57, which is what, according to what happened, according to BOP, instead of 57, it would be for life. Yes, Your Honor. My client is willing to take that risk. And that's been said publicly, or that's what you're saying right now? Yes. Yes, Your Honor. My client wishes to return to the pre-plea posture because that is where counsel's ineffective assistance infected the process. And your first argument could now be ineffective assistance in four years when he's serving a life sentence. I am following the wishes of my client in this regard, Your Honor, and I think it's That doesn't get in the way of ineffective assistance, Hollis, for what it's worth. I mean, I think it's important to point out that we are arguing a correct application of the law. We're vindicating his due process rights here. He has the right to be sentenced pursuant to a law of the United States of America, and that is not what happened in this case. No, you do get that, and you can pay a high price for it. Your Honor, this is a case involving drug dealers, gang members. Two murders, one every, it seemed like every month, an act of violence. I mean, one can argue this was a very good attorney that got him the chance to get out at age 57. Your Honor, this is effectively a life sentence for my client, and I think that we can't know what we don't know, and we don't know what the government could have proved here. We know that my client did waive his rights to trial only with respect to this. One count, and the others that were part of the plea agreement, but he has the right to a jury finding as to the rest of those facts. Okay. Thank you. If we'll rebuttal, we'll hear from the government. Thank you, Your Honor. Thank you, Your Honor. Your Honor, may it please the court, Andrew Noll on behalf of the United States. The question before this court on the certificate of appealability is an ineffective assistance claim, and we now know, of course, in light of the Supreme Court's decision last term in Taylor that attempted Hobbs Act robbery is not a crime of violence. But Kimbrough can't show that his trial counsel provided constitutionally deficient performance in failing to challenge that charge before he pleaded guilty on either the prejudice or the deficient performance prong. And that's particularly in light of the fact, first, of the unanimous assessment of every court that had considered the question by the time that he pleaded guilty in August 2018. As you pointed out, Chief Judge Sutton, there wasn't a court that had yet accepted that argument. But in addition, that's because he can't show prejudice because of the substantial benefits that he received under the plea agreement with the government, which included, as you point out, Judge Murphy, the government's agreement to dismiss 11 charges, including one that required a mandatory life sentence. And I'd emphasize a charge for which Mr. Kimbrough pleaded guilty and accepted the facts of all the relevant elements of that murder charge. He, of course, pleaded guilty to a section 924J offense for the use of the firearm that caused death in that killing. Are we allowed to consider that if his whole argument is that the whole plea should be vacated? I think so, Your Honor, appropriately under the prejudice prong. And I would emphasize that under Hill v. Lockhart, prejudice for an ineffective assistance claim must look at the full complement of circumstances facing both counsel and their client at the time the defendant pleaded guilty. And I think that very rationally includes an assessment of the strength of the government's case. Do you think it's on prejudice? Do you think it is an objective test, meaning would a reasonable person have stood trial under all the circumstances? Or do you think it's a subjective test? Would Mr. Kimbrough have stood trial based on the facts we know about him at the time? So I think the Supreme Court's decision in Lee makes clear that it is overall an objective test. But there's a necessary requirement there that the defendant show that he in fact would have insisted on going to trial and then must substantiate that with objective evidence showing that he would objectively have made that decision. I thought Lee suggested that it may not be an objective. It didn't say either really, but it did suggest that the test should not be, is there any fair basis to think that the defendant would have been acquitted? And the court said that unique circumstances such as the defendant's immigration consequences can be taken into account. So doesn't that suggest at least in some respects it's subjective? So I think the court made clear it's an overall objective test, but there may be unique circumstances like those in Lee where the question facing the defendant and the consequences he wished to preclude are something that's separate and apart from the government's merits on the case and the ultimate legal consequences of being found guilty. There it was immigration consequences. And so in those circumstances, I think the court made clear in those unique circumstances that a defendant's subjective intent is relevant, but he must importantly point to contemporaneous evidence substantiating that. Would that be objective evidence at the time of the plea that he was really concerned about the immigration? Yes, that that was his primary concern. And I'll just note factually here, the district court made clear in its finding below on page 107 of the record that Mr. Kimbrough has never claimed he would have as a factual matter gone to trial. I understand that he's saying that now ex ante in this court, but this court must look for prejudice purposes to his conduct at the time of the plea. And I think there's no indication that he would have taken the risk at the time of the plea of trial on the full complement of 18 charges that the government had charged here for the possibility of challenging count nine. And again, this court must look at the time of under Strickland, the question that you have to weed out the hindsight bias and look at the time of the plea, what was known to both counsel and the defendant. And here there was at most perhaps a plausible argument that attempted Hobbs Act robbery might not qualify. I want to make a factual point that we know from the record, counsel didn't share that belief. Page 1322 of the record in the 2016 criminal case makes clear that counsel thought that attempt offenses qualified under the elements clause. Counsel drew a direct distinction there between a residual cause challenge on conspiracy, which they say would not qualify under the elements clause, and aiding and abetting an attempt offenses. Why is this helping? That arguably shows more ineffectiveness. I don't think, no it doesn't, Your Honor, because at the time that was a reasonable belief and to show ineffectiveness. Well, yeah, but that just takes you back to another point. If you don't win that first point, I don't think this is going to help you. I'm not sure I follow. In other words, obviously one way of thinking about this is no court had accepted it. And you could just say enough is enough, government wins. But under the foreshadowing, you start to get into this trickier territory. And I guess in that territory, I'm not sure this argument helps you much. So Your Honor, we don't think it was clearly foreshadowed. I know, that's the first point. That's what I'm trying to tell you. If you lose that, it's very funny to be making this backup argument, but maybe I'm missing the force of it. I understand, Your Honor. I'm trying to make this factual point to support our clearly foreshadowed. I'm pointing out that counsel, in fact, consistent with the state of the law at the time, which we think did not clearly foreshadow the fact that the Supreme Court would ultimately find that attempt offenses didn't qualify, counsel acting consistent with that, which was fully reasonable under Strickland, where you look at counsel's beliefs at the time of the assistance, counsel was making arguments consistent with the uniform consensus of courts. And again, to the clearly foreshadowing point, I think counsel's best case is the Chase case for showing that a claim can be clearly foreshadowed. But importantly there, that was an Allain challenge, where Allain had already been decided at the time appellate counsel was providing his assistance to the defendant. And this court said quite clearly in Chase that there was no prediction necessary. What about his use of DiMaia? So DiMaia, I think, importantly there, Your Honor, counsel, we know from the factual record in this case, counsel did understand that there was an open argument to be made about the residual clause. In fact, that's the argument counsel made to dismiss count 12, the conspiracy count. Again, I'd point the court again to that 1322 page of the record, where counsel, notwithstanding this court's clear precedent for closing that argument, counsel was continuing to argue that 924C's residual clause did not satisfy under DiMaia constitutional vagueness principles. And so I think it's clear counsel understood that they could and were making that challenge. But with respect to the attempt offense, they clearly thought, consistent again with the full unanimous assessment of courts at the time of the plea, that that offense independently qualified under the elements. Does it matter that we had not decided a case? If so, there's layers clearly foreshadowed. One of those is if we have a binding precedent directly on point, it'll be futile. That's one thing. I know it's not the facts of this case, but if there was a circuit split or something, I could see an argument to be made that counsel has a duty to raise the claim where we haven't decided it and courts have disagreed across the country. So I don't think so, Your Honor, and I would cite you to the Bullard and Snyder cases we cite on pages 21 and 22 of our brief, where the court has said that where there's uncertainty in the case law, it's reasonable for trial counsel not to object. Just to follow up on this point, though, if we had clearly binding Sixth Circuit case law, we still wouldn't say that was futile under Gatewood, right? So only if the Supreme Court has foreclosed the argument does counsel not have to make it. As long as they have the tools to construct the argument, futility won't excuse your procedural default. So I think there's a gap, and maybe the gap is understandable as part of just this is the way Strickland operates, but I'd like you to speak to it. So there's a gap between the Gatewood standard and what you're claiming is the ineffective assistance standard. So in other words, if you have the tools to construct the argument under Gatewood, you don't make the argument, you've procedurally defaulted the claim, but you're also not constitutionally ineffective on the performance prong for having failed to make the claim. And what do you have to say about that? Sure, Your Honor. So under Gatewood, and some courts have held that where the Supreme Court has clearly foreclosed an argument, that provides cause for a defendant not to raise it. I'm not sure we fully agree with that, but I'm going to put that to one side and accept that as part of this argument. I think there is a wide gulf between circumstances in which a defendant has procedurally defaulted the claim, and circumstances we would say their counsel provided ineffective assistance, which is a very high bar. Those cases, I think, are resolved under substantive collateral attacks under 2255, where a defendant in appropriate circumstance can show, notwithstanding an inability to show cause and prejudice, actual innocence, which is a separate finding, that they can show they get relief because perhaps there wasn't a plea agreement and there's no other accounts that they need to establish as relief and there's no other circumstances to think they would have received the same sentence. All I would submit to you, Your Honor, here is that's not this case, where there were 11 counts, and I think the defendant has never claimed, much less established, actual innocence on the remaining counts that the government forewent under plea bargaining. And I just think the Strickland standard is a different standard and quite high standard, and there may be many circumstances where counsel wasn't ineffective and the defendant can't show cause, but nevertheless, relief will follow in appropriate circumstances. And that's just certainly not the, simply not the record we have on this case, Your Honor. Unless the court has further questions, we're happy to rest on our brief and just ask that this court affirm the judgment of the district court. Go ahead. I have one, just a factual question. So why is there such a gap? If Kimbrough, if the grand jury indicted him in 2015 and he pled guilty, why was he not sentenced until 2018? Why did this take three years? So Your Honor, if I recall, there was both a 2015 and a 2016 indictment. The actual operative indictments, the superseding indictment in the 2015 case wasn't filed until November 2017, and same for the 2016 case. If you saw through those indictments, the individual defendant's participation in all of these robberies was evolving as I think the government's investigation proceeded. So he was dead on some counts initially, but the full compliment wasn't until November 2017, and then he pleaded guilty the following summer. Makes more sense. Thanks. Great. All right. Thank you, Mr. Knoll. Thank you, Your Honors. All right, Mr. Hirsch, you have five minutes. Thank you, Your Honor. I just want to address three points. I think with respect to the deficient performance prong, something that was brought up, counsel did make motions to dismiss count 12, which was the same crime but predicated on a conspiracy attempt on a conspiracy crime, rather, I'm sorry. And as the government pointed out, counsel made the incorrect legal argument with respect to the attempt crimes in distinguishing them from conspiracy crimes. So counsel there actually said attempt crimes, the substantial step requires the government to prove an element of violence. Again, Taylor makes very clear that that's incorrect. And with respect to the Chase case, a number of similarly situated litigants were making that exact same argument much, much earlier, post Johnson. Basically if we look at St. Hubert, which was the first court of appeals to affirmatively rule on this issue, that's in the 11th Circuit. It came after Mr. Kimbrough's plea agreement. The briefing in that case is from 2016. The briefing in that case is precisely the argument that led Justice Gorsuch to clarify the law in Taylor. So that's on the deficient performance point. With respect to the government mentioning a uniform consensus of cases, I just want to point out to this court that this precise question did not become relevant until it was clear that the residual clause was unconstitutional. Because attempted Hobbs Act robbery, it was thought that it did meet the requirements of that residual clause. So courts didn't need to consider whether it fell under the elements clause until Johnson and until the circuits had started coming to their own conclusions, especially after Sessions v. DiMaia, that the residual clause was unconstitutional. What was the record in the court of appeals of government winning versus defendant winning before Justice Gorsuch's decision? Your Honor, it wasn't entirely favorable to us. And I think it's because that St. Hubert court kind of led the way in that decision. However, I will note that court of appeals judges are pretty proud and not that likely just to follow other courts for the sake of following them. Do you really think that's what was going on? The question wasn't addressed all that often. I mean, I can think of St. Hubert. I can also think of the Taylor decision, which came out the other way and which ultimately Justice Gorsuch affirmed. So there was certainly like a circuit split after the plea deal and after sentencing. And something about the St. Hubert case that I think is worth noting is about six months after that case, it went to go be heard on bonk. That was denied, but from that denial of certiorari, three separate judges on that court penned three separate dissents, which stated the issues with the original St. Hubert case. Again, laying out the correct application of the categorical approach as Justice Gorsuch did it in Taylor. Don't you think, though, that the fact that so many judges agreed with counsel, that that suggests that counsel was reasonable in thinking that the attempted use provision of the elements clause foreclosed this argument? Your Honor, well, I think that the 11th Circuit, prior to deciding St. Hubert in two post-Johnson cases, they realized that this was going to be an open question of law once the residual clause came through. As Justice Gorsuch put it, they rested their logic on a false syllogism in deciding that case. But again, a clear application of the categorical approach to the elements of attempted hopsack robbery. I guess the question, is there room to say that counsel was unreasonable in failing to make the argument, that that can succeed without us having to say that our colleagues were unreasonable in reaching the result that attempted use this crime? Yes, Your Honor, and I think that the 11th Circuit could look to its own cases prior to that, realizing that this was going to be a question that they were going to have to confront, and also look at the dissenting judges in that case who were making strongly reasoned dissents. With respect to the prejudice prong, counsel, the government brings in Hill here. I just want to say that Hill is a difficult standard to apply in this context, and that's because we're basically asking whether Mr. Kimbrough would have gone to trial had he known that the court may sentence him to a crime without a valid predicate to an unlawful conviction. So I'd ask that this court look to the Strickland inquiry, which is whether there's a reasonable probability that the results of the proceedings would have been different, or more recently, Lafler v. Cooper, which is that the outcome of the plea process would have been different. I think that these are more informative ways to look at the prejudice prong, and they are expansions of the Hill inquiry, just in different factual contexts, which I think is necessary here, and I just want to point out that the Jones court in the Eighth Circuit did that, the McKinney court in the Fourth Circuit did that, and the Mejia court, as put forth in our Rule 28J letter, did that in the District of D.C. Okay, thank you very much. Thank you, Your Honors. We appreciate both of your arguments and your brief, and Mr. Hirsch, congratulations on a terrific argument. I don't know if you're still in law school or just leaving law school, but either way, you're going to be a terrific lawyer. Mr. Kimbrough is really lucky to have your advocacy. It was really good. It's an honor to be here. I thank you all very much. All right, thank you. The case will be submitted, and the clerk may call the next case.